IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JULIUS ELMER TAYLOR                                                    PLAINTIFF

vs.                                                  CIVIL ACTION NO. 3:15cv171-SAA

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Julius Elmer Taylor has filed suit under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his applications for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed an application for benefits on May 8, 2013 alleging disability beginning on March 30, 2013. Docket 7, p. 175-85. His claim was denied initially on August 23, 2013 and upon reconsideration on September 13, 2013. *Id.* at 45-76. He filed a request for hearing and was represented by counsel at the hearing held on August 19, 2014. *Id.* at 29-43. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 23, 2014, (Docket 7, p. 12-23) and on September 28, 2015, the Appeals Council denied plaintiff's request for a review. *Id.* at 6-9. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to

issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on August 14, 1957 and has a GED. Docket 7, p. 33. He was fifty-seven years old at the time of the hearing. *Id.* at 33. Plaintiff's past relevant work was as a forklift operator, a machine operator and a layout man/spray painter. *Id.* at 16, 41. Plaintiff contends that he became disabled before his application for benefits as a result of "left lung problems, shortness of breath." *Id.* at 206.

The ALJ determined that plaintiff suffered from "severe" impairments including "chronic obstructive pulmonary disease (COPD) and status post pulmonary embolism," (Docket 7, p. 17), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 19. Based upon testimony by the vocational expert [VE] at the hearing and considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he cannot work around fumes, dusts, odors, gases, poor ventilation, extreme heat, or extreme cold.

Docket 7, p. 14. After further analysis under applicable rulings and regulations, the ALJ found plaintiff to be less than fully credible in that the intensity, persistence and limiting effects he claimed due to his symptoms were not credible. *Id.* at 21. After evaluating all of the evidence in the record, including testimony of a VE, the ALJ held that plaintiff could perform the jobs of a sandwich maker, laundry worker and grocery bagger. *Id.* at 22. As a result, the ALJ concluded

that plaintiff is not disabled under the Social Security Act. *Id.* at 23.

Plaintiff contends that the ALJ erred because she declined to properly develop the record by ordering a consultative examination after plaintiff's counsel requested that she do so.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v.*

---

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

*Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff contends the ALJ erred in electing not to order a consultative examination requested by plaintiff's counsel despite a lack of treating source or other medical opinions after plaintiff's October 2013 hospitalization and treatment for multiple bilateral pulmonary emboli and emphysema. Docket 13, p. 5. The Commissioner posits that "[b]ecause the record evidence supports the ALJ's RFC finding, the ALJ properly declined to order a physical consultative examination," and the "evidence of record showed that Plaintiff responded to treatment and did not have any additional limitations than those recognized by the ALJ." Docket 13, p. 7.

In the 3-sentence paragraph that contains the only discussion of the opinions expressed by physicians as to plaintiff's abilities, the ALJ afforded significant weight to the opinions of the non-examining state agency medical consultants. Docket 7, p. 21. The ALJ did not identify those consultants by name or specify exactly what their opinions were, but he nevertheless gave them significant weight. These two physicians, Dr. Madena Gibson and Dr. Glenn James,

reviewed plaintiff's medical records and provided opinions on August 22, 2013 and September 13, 2013, respectively. Docket 7., pp.47-53, 63-69. Both of those opinions predate plaintiff's hospital admission on October 22, 2013 for multiple bilateral pulmonary emboli, another hospital admission in February 2014 for an acute submassive pulmonary embolism, and the following years of treatment with blood thinners and various other medications. Docket 7, pp. 659-794, 820-1011. He was discharged home with medication, activity as tolerated and instructed to follow up with the coumadin clinic two days later. Docket 7, p. 725. Neither of the state agency physicians examined plaintiff, and neither had these medical records at the time they provided their opinions. There are no medical opinions from any source, including state agency physicians or plaintiff's treating physicians, addressing plaintiff's limitations and ability to perform work-related functions after the October 2013 and February 2014 medical events.

The Commissioner argues that opinions from consulting or examining physicians are unnecessary as plaintiff's medical records indicate his breathing issues are stable and that he has no musculoskeletal issues or other issues that warrant a consultative examination. Docket 13, p. 7-9. Additionally, the Commissioner asserts that plaintiff's failure to follow his Coumadin regimen precludes disability. *Id.* at 8.

The court questions the Commissioner's attempts to support an ALJ's opinion that does not appear to be based upon any medical opinion following the October 2013 and February 2014 medical events. Certainly, the responsibility of determining the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); in making this determination she must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his

physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, she is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). The ALJ is simply not at liberty to establish physical limitations or lack of those limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

Here, to reach an RFC for the period after October 13, 2013, the ALJ needed an opinion as to plaintiff's abilities and limitations from a physician who had the benefit of reviewing all of plaintiff's medical records and, preferably, examined or treated the plaintiff. 20 CFR 404.1519a(b)(1) specifies that the Commissioner may order a consultative examination to make a proper determination when evidence is needed that is not contained within the records of the medical sources. This is exactly the scenario plaintiff finds himself in today. At the time of the treatment records which the agency physicians reviewed, plaintiff's treating physicians were not concerned about what, if any, limitations prevented plaintiff from performing work functions, and the Commissioner never asked them to provide any opinions at a later date. Their records do not contain opinions as to whether plaintiff can lift 50 pounds or stand for six hours in a day. Instead of properly obtaining a consultative examination, the ALJ stated that "the record contains

7

current medical records through July 26, 2014" and she interpreted those medical records on her own to reach plaintiff's RFC.

Plaintiff's extensive medical history is the type of case that requires a consultative examination. The court is not convinced that plaintiff is in fact disabled and actually concludes that the ALJ had substantial evidence to conclude that plaintiff was not disabled before his October 2013 hospitalization. However, the ALJ should have obtained an updated consultative opinion or an examining opinion as to plaintiff's ability to perform work related functions in light of his more recent diagnoses, hospitalizations and medication regimen.

Additionally, it may be necessary to amend the onset date to reflect the fact that defendant did not qualify for disability based upon his initial application for benefits. The Fifth Circuit has held that "it is essential that the onset date be correctly established and supported by the evidence." *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993). The claimant's stated onset date is the onset date considered by the ALJ when it is consistent with the medical evidence. When ambiguity exists as to the onset date, and the ALJ is required to infer the onset date from medical or other evidence, she must seek the opinion of a medical advisor. *Id.*

Because the ALJ neede a medical opinion to support a proper RFC regarding plaintiff's ability to perform work related functions after his October 2013 and February 2014 hospitalizations, the court concludes that the ALJ's decision was not supported by substantial evidence. The case is remanded to obtain a consultative examination and an opinion as to the extent that plaintiff's limitations impede his ability to perform work related functions. Further, the ALJ is to consider whether an amendment of the onset date is proper.

## IV.  CONCLUSION

The Commissioner's denial of benefits will be remanded for additional review in accordance with this opinion.  A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 17th day of June, 2016.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE